UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|   |   |   |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
|   | ) |   |
| ETTORE DOMINIC SCASSA, | ) | CASE NO. 05-62448 |
|   | ) |   |
| Debtor. | ) | JUDGE RUSS KENDIG |
|   | ) |   |
|   | ) | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |

This matter is before the Court on Debtor's Motion to Avoid Judicial Liens, filed with the Court on October 2, 2008. Debtor seeks to avoid two judicial liens on his real estate, held by Allied Corporation, Inc. ("Allied") and Walter Jones Construction Co. ("Walter Jones"). Walter Jones did not file a response. Allied filed an objection on October 22, 2008. Debtor filed a response on November 14, 2008. The Court held a hearing on this matter on November 17, 2008, at which time neither side requested an evidentiary hearing, but both Debtor and Allied requested the opportunity for supplemental briefing. Both Debtor and Allied filed a supplemental brief the next day, November 18, 2008.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Debtor filed for protection under chapter 7 of the Bankruptcy Code on May 4, 2005. On his Schedule D, among other secured debts, he scheduled a debt to Allied in the amount of $48,262.35, and a debt to Walter Jones in the amount of $7,519.28, each secured by a judgment lien on Debtor's real property. The chapter 7 trustee determined the case to be an asset case and filed a notice of assets and request for notice to creditors on November 3, 2005. The Court entered an order of discharge on November 4, 2005.

The liquidated value of the estate, according to the trustee's final report and account of October 31, 2007, was $7688.64. One hundred percent of this total went to satisfy the claims of administrative and priority creditors: $1,573.02 for the fees and expenses of the chapter 7 trustee, $5,944.58 to the Internal Revenue Service (a pro rata distribution on a claim of $83,748.86), and $171.04 to the Ohio Bureau of Workers Compensation (a pro rata distribution on a claim of $2,409.69). Unsecured creditors received nothing from the estate and never had any serious probability of participating in any distribution from the estate.

The case closed on March 3, 2008.

On September 2, 2008, Debtor filed a motion to reopen the instant case for the purpose of avoiding judgment liens on Debtor's real property.[1] The Court reopened the case on September 25, 2008, and Debtor filed the instant motion to avoid on October 2, 2008, alleging that mortgage liens superior to the judgment liens of Allied and Walter Jones had total values greater than the value of the real estate. His motion lists the value of Allied's lien at $49,021.80 plus interest, attorneys' fees, and costs, and Walter Jones' lien at $7,519.28 plus interest at 24% from May 25, 2003, plus court costs.

Allied filed a response on October 22, 2008, arguing that Debtor should not be allowed to avoid the lien because Allied was never properly scheduled on Debtor's original Schedule D. Debtor originally scheduled Allied as having an address at 47 North Care Ave., Akron, Ohio 44035. Neither party now disputes that this was the incorrect address; indeed, that address does not even appear to exist. In addition, Allied's response contended that the actual values of the parcels[2] of real property are higher than those Debtor stated in his motion to avoid, and that there remains an issue of material fact regarding whether Allied's lien actually impairs Debtor's exemption.

The issue now before the Court is whether Debtor's original failure to schedule a valid address for Allied means that Debtor has forfeited his opportunity to remove Allied's judicial lien.

---

[1] The motion stated that Debtor sought to avoid three judgment liens; however, Debtor has specified only two in the instant motion to avoid.

[2] Debtor states in its motion that his homestead consists of four parcels, with a total value of $247,830.00. (Debtor's Mot. to Avoid para. 4.) In the next paragraph, he lists what appear to be five parcel numbers, broken into two tracts, the first jointly owned with Mary L. Scassa and the second owned by Debtor alone. (Debtor's Mot. to Avoid para. 5.) Even dividing the value of the first parcel by two and adding the full value of the parcel owned by Debtor alone does not quite yield the total Debtor claims in para. 4, and no other permutations come close. Performing the same calculation with the values of the parcels contained in the Carroll County Auditor's records yields yet another figure, $258,670.00. Debtor also claims all four (or five) parcels as his "homestead" and states that the entirety is encumbered by at least four liens (not including those of Allied or Walter Jones) totaling $638,635.11; the first lien alone is stated as having a value of $275,000.00, which would appear to consume all of Debtor's equity in the real estate, and yet the record reflects no motions to avoid any of these liens.

2

## LEGAL ANALYSIS

Nothing in the Bankruptcy Code forbids a debtor from avoiding a lien securing a debt even after the discharge has been entered, or even after the debtor's case under title 11 has been closed; the test is a simple one of balancing the equities. However, the equities are balanced in a creditor's favor if a creditor will be materially prejudiced by the avoidance of the lien. In this case, the creditor would be materially prejudiced by the avoidance of its lien, because the underlying debt was nondischargeable under the Bankruptcy Code provision preventing the discharge of unscheduled debts if the creditor receives no notice or knowledge of the bankruptcy case before the claims bar date. The test for dischargeability is *not* one of balancing the equities; the test is one of straight application of the statutory text. Because there was a claims bar date set in this case and the creditor had no knowledge of the case before that date passed, the underlying debt became nondischargeable. Because the underlying debt is nondischargeable, permitting the debtor to avoid the lien securing it at this late stage would be inequitable.

## I. Procedural Posture

The central issue in this case is actually not whether reopening a case to avoid a lien is permissible under the Code, but whether the debt secured by Allied's lien was discharged by the existing order of discharge. This puts the Court in a procedural quandary, as dischargeability must usually be determined in an adversary proceeding. Lien avoidance, by contrast, is done by motion.

## II. Reopening a Case to Add a Creditor

The reopening of this case actually had no effect whatsoever on the dischargeability of the underlying debt, and nor will permitting Debtor to schedule it. Debtor argues that he should be allowed to schedule a creditor now that was omitted from his schedules from filing until after discharge, apparently under the assumption that this reopening and scheduling makes a difference regarding whether the debt is discharged. By virtue of this argument, the Court has diagnosed a case of Rosinski syndrome. This malady, identified and described at length by the Sixth Circuit in Zirnhelt v. Madaj (In re Madaj), 149 F.3d 467 (6th Cir. 1998), is a form of confusion

> due, in part, to a line of cases that perpetuates the erroneous view that once his case is closed, the debtor must have his case reopened in order to discharge a pre-petition debt not listed in the bankruptcy petition; once the case is reopened, the debtor amends his schedules to list the debt, and the now-scheduled debt is covered by the discharge. But this is not the law.

Id. at 468. That line of cases began with the Sixth Circuit's holding in Rosinski v. Boyd (In re

3

Rosinski), 759 F.2d 539 (6th Cir. 1985). In Madaj, the Sixth Circuit expressly addressed two "different, and equally invalid, propositions" that it perceived to have flowed from subsequent practitioners and lower courts drawing upon Rosinski:

> (1) that reopening the case to amend the schedule of debts is necessary in order to effectuate the discharge of an unlisted debt; and (2) that the debtor's intent in failing to list the debt can somehow affect the nature of the debt and, therefore, the debt's dischargeability.

Madaj at 470. Neither of these propositions is the law in this circuit. The first is unnecessary; the second is simply untrue. This holding cabined Rosinski in a well-secluded cabin, because, as clarified by Madaj, Rosinski stands for the proposition that a debtor may be allowed to reopen a case to schedule an unscheduled creditor, but doing so is orthogonal to the question of whether any debt owed that creditor was or is affected by any order of discharge in that reopened case. "To say, as the Rosinski Court did, that the creditor may not prevent the debtor from reopening the case to amend the schedule is not to say that it is necessary for the debtor to reopen the case in order to obtain a discharge of the debt." Madaj at 471.

The lone case cited by Debtor in support of his argument, Soult v. Maddox (In re Soult), 894 F.2d 815, 817 (6th Cir. 1990), drew heavily upon Rosinski for the substance of its holding, and more specifically upon the later-disclaimed misinterpretation of the Rosinski holding that posits reopening a case and scheduling a debt as a prerequisite to discharging that debt. Under the Bankruptcy Code, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Soult interpreted Rosinski to stand for the proposition that "'other cause' can be found when the failure to schedule a debt was simply inadvertent and did not prejudice the creditor in any way." Soult at 817. This remains a valid statement of the law; it just does not flow from this that reopening such a case under these circumstances leads to a discharge reaching a debt that it otherwise would not have.

### III. Avoiding a Lien After Discharge

#### A. Reopening a Case to Avoid a Lien: Balancing the Equities

Just as Soult does not yield everything Debtor attempts to produce from it, nor do Madaj and In re Jent, 37 B.R. 561 (W.D. Ky. 1984) lead to the conclusion Allied urges. The Jent court actually not only held that it was it permissible for late-filing debtors to avoid liens even subsequent to discharge if the balance of equities favored it, but criticized previous bankruptcy courts in its district for "shift[ing] the burden of proof to the late-filing debtor to come forth with an 'excuse.'" Jent at 564. "The Code gives debtors an unrestricted right to avoid certain liens on exempt property so they can achieve a meaningful fresh start." Id. at 565.

4

The case in <u>Jent</u> had not been closed yet, but the "vast majority of courts" to address the subject have held "that bankruptcy cases can be reopened for the purpose of lien avoidance based on equitable considerations." <u>In re Bowshier</u>, 389 B.R. 542, 550 (Bankr. S.D. Ohio 2008). <u>See also</u> <u>Rheinbolt v. Credit Thrift of America, Inc. (Matter of Rheinbolt)</u>, 24 B.R. 167, 170 (Bankr. S.D. Ohio 1982) ("[T]he majority of cases ... permit complaints to avoid liens to be filed at any time, subject to equitable considerations."). In fact, at least one case from this district held that not only was the closure of a case, "absent equitable considerations to the contrary," no bar to bringing a lien avoidance action, but that the bankruptcy case need not even be reopened in order to bring such an avoidance action. <u>Keller v. Time Credit Corp. (In re Keller)</u>, 24 B.R. 720 (Bankr. N.D. Ohio 1982).

Other courts have, in place of the "equity-balancing" test, articulated the rule "that lien avoidance is permissible even subsequent to discharge if there has been no injury or prejudice to the creditor." <u>Jent</u> at 563. There may be some slender areas of non-overlap between the two, and one leading treatise posits them as alternative tests. Am. Jur. 2d Bankruptcy § 1556. However, in practice, the two tests are functionally identical; <u>Jent</u> used them essentially interchangeably, and it would be difficult to conceive of a situation in which the two yielded different results.

## B. Dischargeability: Straight Statutory Text

Having said that the test for whether a debtor can reopen a closed case to avoid a lien is one of balancing the equities, the Court turns now to the question of where those equities lie. In the final analysis, under these facts, only one question matters: Was Debtor's debt to Allied discharged by the Court's order of discharge on November 4, 2005? If the debt was not discharged, then allowing Debtor to avoid the lien would prejudice Allied: it would have to record its judgment again as a new lien, taking additional time and expense as well as a possible relegation to a lower priority status. If the debt was discharged, however, then Allied would not be prejudiced by allowing Debtor to avoid the lien, assuming that all the other elements justifying avoidance of liens in bankruptcy are present, because it is not being denied anything to which it would otherwise be entitled, and the equities would clearly favor the outcome according Debtor the fresh start to which the Bankruptcy Code entitles him.

Under 11 U.S.C. § 523(a)(3)(A), a debt is nondischargeable if it is

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--

> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing.

5

There has been no allegation that this is a debt of a kind specified in (2), (4), or (6) of section 523, the nondisclosure of which would be addressed by § 523(a)(3)(B). The critical factual issue, therefore, is whether Allied had notice or actual knowledge of the case in time to file a timely proof of claim. The burden of proof rests with the debtor to show that a creditor had "notice or actual knowledge" under § 523(a)(3). Matter of Faden, 96 F.3d 792, 795 (5th Cir. 1996). Debtors likewise bear the burden of completing their schedules accurately. Id.; see also Matter of Springer, 127 B.R. 702, 707 (Bankr. M.D. Fla. 1991). Adverse parties in an adjudication to be accorded finality are entitled to notice reasonably calculated to apprise them of the pendency of the proceeding and the scope of their rights, together with information sufficient to provide them with an opportunity to prepare and present a response. Faden at 795-96, citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Debtor has submitted no evidence to suggest that, despite the improper address scheduled, Allied received notice or had actual knowledge of the bankruptcy through some other means; Debtor does not even make such a contention in any of its pleadings and did not do so at the hearing on November 17, 2008. The Court therefore finds that Allied had no notice or actual knowledge of Debtor's bankruptcy prior to the claims bar date. Debtor's debt to Allied is therefore nondischargeable under § 523(a)(3)(A).

Debtor and Allied both advance arguments based on Madaj, which involved the dischargeability of an unlisted general unsecured debt in a no-asset chapter 7 case. The rule announced by Madaj is that an unlisted debt in such a circumstance, if not nondischargeable on other grounds, such as fraud, can nevertheless be held to be discharged by the order of discharge (even without reopening the case and scheduling that debt), because one of the requirements of § 523(a)(3)(A) is that the creditor not learn of the case before the claims bar date. There are no claims bar dates in no-asset chapter 7 cases; claims bar dates are set when trustees submit notices of assets and requests to file claims to the clerk of the bankruptcy court, which are then served to scheduled creditors. Therefore, in such a case,

> [b]ecause § 523(a)(3)(A) excepts the unscheduled debt from discharge "unless such creditor had notice or actual knowledge of the case in time for such timely filing," the moment the creditor receives notice or knowledge of the bankruptcy case, § 523(a)(3)(A) ceases to provide the basis for an exception from discharge. Consequently, the debt is at that point discharged.

Madaj, 149 F.3d at 470. In other words, the procedural realities of a no-asset chapter 7 case make it such that, in the ordinary course of things, no debt will ever meet the criteria of 11 U.S.C. § 523(a)(3)(A), and the debt is discharged with or without notice.

This is not such a case, however; while there were too few assets and too many priority unsecured claims for general unsecured creditors to receive a distribution from estate assets, this was nevertheless an asset case in which a claims bar deadline was set, and that claims bar date passed without Allied being notified or otherwise learning of Debtor's bankruptcy. The test for

6

whether a court should allow a debtor to pursue a *lien avoidance* motion post-discharge is one of balancing the equities; the various tests for *dischargeability* of debts (including those secured by a lien), however, are spelled out in the statute. When a statute's language is clear, "the sole function of the courts is to enforce it according to its terms." U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (internal quotation omitted).

Some of the reasoning behind the Madaj court's opinion does appear to justify Debtor's argument as a matter of equity. For example, citing Rosinski (favorably in this instance), the Madaj court did hold

> that the rights of an omitted creditor in a no-asset case do not conflict with the debtor's right to discharge, because, though he did not receive any earlier notice, [the creditor] has not lost his opportunity to file a proof of claim sufficient for him to share equally with creditors who were initially scheduled.

Madaj at 471 (quotation omitted). Likewise, the court noted that debts excepted from discharge by § 523(a)(3)(A) are only excepted "because an injustice will result if the debt is discharged in a situation where the creditor never had the opportunity to participate in the distribution of the assets of the estate." Id. at 470. Allied, as a general unsecured creditor in a case in which general unsecured creditors received nothing, did not lose an opportunity to file a proof of claim sufficient for it to share equally with creditors initially scheduled. With respect to Allied, there was never any distribution of assets of the estate for it to participate in. Indeed, the amount of undiscovered assets that would have to materialize for a distribution of later-discovered assets to reach general unsecured creditors would be more than $78,000.00, more than ten times the amount of the liquidated value of the estate as of the trustee's final report and account. These would be convincing arguments were the test for dischargeability one of balancing the equities, but it is not. This Court is not free to permit lien avoidance due to the clarity of the text of the Code regarding dischargeability, even where no underlying purpose is served. Such is the nature of the rules of statutory construction imposed on lower courts.

## IV. Impairment of the Homestead Exemption

In addition, even were the Court to find sufficient "wiggle room" in Madaj to hold that the fact that there were insufficient assets to provide a distribution to general unsecured creditors allowed the conclusion that the debt was discharged despite Allied's lack of notice or knowledge, it appears that Debtor may well overestimate the permissible scope of his § 522(f) motion. The reason is that it appears that, despite describing several (likely contiguous) pieces of property as his "homestead," Ohio's homestead exemption only allows a debtor to claim an exemption in *one* parcel or item of real or personal property used as a residence. Ohio Rev. Code § 2329.66(A)(1). It appears from the facts as pled, and from Debtor's schedules, that Debtor owns at least four and possibly five parcels, only one of which is owned as a homestead. Debtor's motion to avoid is brought under 11 U.S.C. § 522(f), allowing the avoidance of certain liens that impair a debtor's exemptions in property. Since Debtor has no exemption that could be impaired

7

in the other parcels, to the extent that Allied's lien was ever valid against them (this issue was not factually developed at the hearing and the Court has not been provided with documentation regarding which parcel(s) Allied's lien was recorded against), it would remain so even were Debtor able to avoid the lien on the parcel in which he could claim an exemption.

An order in accordance with this opinion shall be entered contemporaneously.

/s/ Russ Kendig
---
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List:**

Ettore Dominic Scassa
2163 Patriot Road S E
Carrollton, OH 44646

Robert E Soles, Jr
Washington Square Office Park
6545 Market Avenue, N
North Canton, OH 44721-2430

Anthony J. DeGirolamo, Trustee
Courtyard Centre, Suite 625
116 Cleveland Ave., N.W.
Canton, OH 44702

Lenore Kleinman
Office of the U.S. Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue, East
Suite 441
Cleveland, Oh 44114-1240

Matthew H. Matheney
Mellissa A. Jones
2500 Key Center
127 Public Square
Cleveland, OH 44114-1230